IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAURICE SANDERS,                :
                                :
    Plaintiff,                  :
                                :
v.                              :      CIVIL ACTION 05-0144-M
                                :
UNITED STATES OF AMERICA,       :
                                :
    Defendant.                  :

MEMORANDUM OPINION AND ORDER

This action comes before the Court on Defendant United States of America's Motion for Partial Summary Judgment (hereinafter *USA*) (Doc. 66).  Jurisdiction has been invoked in this Court under 28 U.S.C. § 1333.  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 63).  After consideration, Defendant's motion is **GRANTED**.

The facts are as follows.  On February 28, 2003, Plaintiff Maurice Sanders was employed on the maritime vessel CAPE HORN when he was injured in a fall (Doc. 67, Exhibit C [Cervati Depo], pp. 5-6).[1]  Mary Cervati was—and still is—the claims manager for

---

[1]Plaintiff provided a complete copy of Mary Cervati's deposition (Doc. 67, Exhibit C) while Defendant provided only excerpts from the deposition (Doc. 66, Exhibit A), so the Court will reference Plaintiff's exhibit and refer to it as *Cervati's Depo*.

Marine Transport Lines which manages the CAPE HORN for the U.S. Maritime Administration (*id.* at p. 4).  In a deposition dated June 28, 2006, Cervati stated that she became aware of Plaintiff's injury the day it happened and opened a file to pay his medical bills and maintenance payments of eight dollars a day (*id.* at pp. 1, 5-6, 10).  Sanders was first treated by Dr. Fleet who ordered an EMG, an MRI, and various pain medications for his back; to Cervati's knowledge, Dr. Fleet never recommended surgery (*id.* at pp. 6-9).  Dr. Fleet never responded to Cervati's requests for medical information (*id.* at p. 9).

On December 4, 2003, Cervati received a fax from an orthopedic surgeon named Dr. Bindal, who recommended that Plaintiff undergo bilateral facet injections at L 4-5; Cervati approved the treatment and cost (*id.* at p. 10).  In correspondence of February 20, 2004, Dr. Bindal indicated that the nature of his treatment was palliative (as opposed to curative), that Sanders had not reached maximum medical improvement, and that it was undetermined when he would reach maximum medical improvement (*id.* at p. 11; Doc. 66, Exhibit A, Depo. Exhibit D-1).  In an office note dated March 25, 2004, Dr. Bindal states that he had advised Plaintiff to consider surgery—an L4-5 fusion; the doctor said Sanders was a good candidate in light of his previous fusion at L5-S1 (Doc. 66, Exhibit A, Depo. Exhibit D-2; *see also* Cervati Depo. p. 13).  The

2

office note states that Sanders "seems interested in proceeding with the surgery" and the the surgery would "proceed when he is ready" (Doc. 66, Exhibit A, Depo. Exhibit D-2).

Cervati talked with Sanders in June 2004 and recommended that he get a second opinion, from a doctor of his choice, on the surgery; Cervati stated that Plaintiff thought a second opinion was a good idea (Doc. 67, Cervati Depo., pp. 14-15, 51).  Sanders was supposed to provide a report from the second doctor (*id.*).  Cervati next talked with Plaintiff on September 29; at that time, Plaintiff stated that "he had not made any plans or any appointments to seek a second opinion" (*id.* at p. 15).  Cervati told Sanders that she was going to make maintenance payments through the next day, September 30, 2004, but that she could not make any more until she received "a full status report on what kind of treatment he was getting and whether he was getting the surgery or not;" she also called Plaintiff's attorney and explained this in a message to his secretary (*id.* at pp. 16-17).

Cervati received no response from either Sanders or his attorney until August 2, 2005 when she received a voice mail message from Sanders which said that he had dismissed his attorney and would like to either "try to deal with [her] directly or else he was going to get another attorney;" the message said nothing about surgery (*id.* at pp. 17-18).  Cervati called Plaintiff's wife and explained that she (Cervati) could

only discuss the case with Sanders if he did not have an attorney and that she would need to have evidence of that in writing (*id.*).  On August 5, 2005, Cervati received a fax, copied from Plaintiff to his attorney, in which Sanders terminated the attorney-client relationship (*id.* at pp. 20-22).  Cervati stated that she received several status reports after receiving Sanders's fax, the latest being January 19, 2006; the reports stated that Plaintiff was still under Dr. Bindal's care, that he had not recovered sufficiently to return to work, and that he needed surgery (*id.* at p. 22).

Cervati testified that Sanders was paid maintenance payments through September 30, 2004 (*id.* at p. 12).  Though no more payments were made, the file was kept open because no more information was made available regarding Plaintiff's treatment (*id.* at 60).

On December 21, 2004, Plaintiff brought this action in the U.S. District Court for the Southern District of Texas, claiming reimbursement for injuries under the Jones Act, unseaworthiness of the vessel, and maintenance and cure (Doc. 1).  At that time, Sanders named a number of different Defendants, but USA is the only remaining Defendant (Docs. 16-17).  On March 7, 2005, this action was transferred to this Court (Doc. 20).  On July 28, 2006, Defendant filed a Motion for Partial Summary Judgment (Doc. 66) to which Plaintiff has Responded (Doc. 67); each party has

since filed an additional pleading to make their arguments (Docs. 68, 71).

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motion for partial summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Id.*

Defendant seeks partial summary judgment on Sanders's claim for maintenance and cure (Doc. 66).  More specifically, USA

argues that Plaintiff has waived his right to maintenance and cure because he has not pursued surgery as recommended by his own doctor, Dr. Bindal (Doc. 66, pp. 7-9).

The U.S. Supreme Court, in *Farrell v. U.S.*, 336 U.S. 511, 515 (1949), discussed maintenance and cure, noting that it was not a lifetime benefit.  Essentially, the shipowner is liable to a seaman, who is injured while serving the ship, for maintenance, *i.e.*, a daily stipend pre-determined by contract, and necessary medical treatment until the injured seaman is cured or has reached maximum medical improvement.  *Farrell*, 336 U.S. at 517.  It is further noted that "[i]n the maritime law it has long been held that while fault of the seaman will forfeit the right to maintenance and cure, it must be 'some positively vicious conduct-such as gross negligence or willful disobedience of orders.'" *Warren v. U.S.*, 340 U.S. 523, 528 (1951) (citations omitted).  "Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection." *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731 (1943).

In *Oswalt v. Williamson Towing Co., Inc.*, *part*, 488 F.2d 51, 53 (5th Cir. 1974),[2] the Fifth Circuit Court of Appeals held the following:

---

[2] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

> A forfeiture for unreasonable refusal is called into play in one of two ways. First, the seaman may simply reject all timely medical attention or quit participation in a course of therapy already begun. In such a case, the right to maintenance and cure is forfeited because the purpose of the award can no longer be achieved. These conjunctive remedies do not operate as substitutes for damages; they are not general compensation, but rather are directed toward the specific objective of providing for the subsistence and medical expenses of a seaman until he has reached the point of maximum possible cure. When, therefore, that point is either reached or the erstwhile patient voluntarily stops short of its attainment by refusing medical attention, the justification for the payments likewise ceases.

*Oswalt*, 488 F.2d at 53-54.[3]  The U.S. Court of Appeals for the Ninth Circuit has held that "[i]t is well settled that a seaman's right to maintenance and cure is forfeited by voluntary rejection of hospital care." *U.S. v. Johnson*, 160 F.2d 789, 798 (9th Cir. 1947), *affirmed in part, reversed in part*, 333 U.S. 46 (1948). However, it is noted that the U.S. Supreme Court has specifically declined to address this question. *See Vella v. Ford Motor Co.*, 421 U.S. 1, 6 n.4 (1975) ("Nor do we express any view whether a seaman may forfeit his right to maintenance and cure by not reporting a known injury or malady, or by refusing from the

---

[3] The Court notes that the second way a forfeiture can take place, which is not applicable here, occurs when an injured seaman who requires extensive convalescence is cared for at a public or marine hospital as the seaman incurs no expense during this portion of the recovery. *Oswalt*, 488 F.2d at 54.

outset to allow proper medical examination, or by discontinuing medical care made available").

In summary, Defendant has presented evidence showing that Plaintiff was offered maintenance and cure payment through September 30, 2004. USA has offered further evidence that Sanders's doctor recommended back surgery as early as March 25, 2004, but that Sanders has failed to schedule surgery or get a second opinion as for the need for that surgery as of June 28, 2006, despite being told to do so. Plaintiff has offered no evidence to rebut this. Though Sanders asserts that surgery has not been scheduled because of his doctor's failure to do so (Doc. 71, p. 3), no evidence has been provided which supports the assertion. More pointedly, Dr. Bindal's note states that the surgery would "proceed when [Sanders] is ready" (Doc. 66, Exhibit A, Depo. Exhibit D-2).

The Court finds that Plaintiff has waived his right to maintenance and cure beyond September 30, 2004 under *Oswalt*. Therefore, the Court **GRANTS** Defendant USA's Motion for Partial Summary Judgment as to Sander's claim for maintenance and cure (Doc. 66).

DONE this 6th day of September, 2006.

                                        s/BERT W. MILLING, JR.
                                        UNITED STATES MAGISTRATE JUDGE